The court will proceed to the sixth case of the day, the United States v. McGuire. Ms. Gambino. Good morning, Judge Plum, Judge Connie, and Judge Sykes. I'm here on behalf of Ms. Sandra McGuire, and we have two issues to present to the court today. The first is whether the district court abused his discretion when he refused to grant Ms. McGuire's motion to withdraw her plea of guilty. And the second is whether she was prevented from bringing this appeal by the waiver of appellate rights that was included in her plea agreement. And it is our position that the first issue takes care of the second, and I will start there. First of all, Ms. McGuire was a firefighter, and she had been so for 20 years. Was she eligible to retire? Yes. She didn't have an age limitation, so she could have retired before she pled, right? No, I think that she's eligible to retire, but the timing was such that she wasn't eligible to retire until recently, after. Is that what's at the heart of this case, that a recognition to save the pension was to put off the plea? At the heart of the case, yes. The heart of the case was that she didn't understand fully the consequences of entering the plea for her employment and her pension, and generally speaking, what she was doing. She did not understand, as became clear at her sentencing allocution, even what it was that she was doing there. Well, she knew she was, she pled guilty to a felony, and she stood a chance of losing her pension, right? I mean, bottom line. The bottom line was that, and I think that she did not fully come to terms with this until after that plea colloquy. And once she did come to terms with that and realized what was going to happen, she fired her lawyer that entered the plea, hired a new lawyer, and sought to take the plea back. Was that you, the new lawyer? I was the new lawyer.  Guilty as charged, Your Honor. So, with respect to whether she was eligible to take her plea back, you can analyze it. It's our position under either 11D1 or 11D2. And under 11D1, because of the confusing nature of the plea colloquy, 11D1 provides that you can take a plea back at any time before the plea is accepted for any reason or no reason. When did you become counsel? After she had entered her plea of guilty. Afterward. Right. She had fired the lawyer that, after the plea of guilty, looked for new counsel, and that turned out to be me. Well, the only thing that there was confusion about at the end of the plea colloquy, or the plea hearing itself, was not whether the plea was accepted, but whether the adjudication of guilt would be entered as of that date, because of this issue of her employment pending sentencing. But the court clearly said, all right, her guilty plea is accepted, but I do withhold adjudication of guilt until her sentencing.  Yes. And then he went on to directly address her and said to her that he was going to delay his decision on accepting or rejecting your agreement with the government until the sentencing hearing. Right. That's the sentencing agreement, the 11C binding sentencing recommendation. That's not the plea. Well, the plea, the problem with parsing the plea from the adjudication of guilt from the sentencing, from the plea agreement, is that if you say the plea, there's never going to be a circumstance under which 11D1 will apply, because there has to be a plea at least offered or accepted before it can be withdrawn. And in this particular case, it was offered. The court said, okay, I accept your plea, but I'm not going to adjudicate, I'm not going to find you guilty, and I'm not going to make any decision about the terms of your agreement. So there was virtually nothing that he did at that moment other than acknowledge that she was offering to plead guilty. Well, he accepted her guilty plea. But what does that mean, in fact? Well, he accepted everything you said. You pled guilty. Except that he didn't find her guilty and he didn't agree to the ---- Well, but she's the one now to come in and say, well, I didn't mean what I really said. I didn't mean to plead guilty. That's correct, because she didn't understand the consequences of her plea. Judge Moody went through detailed examination of this defendant and covered everything he's supposed to cover, something she may have reserved in her own mind about how this is going to affect her pension. It wasn't really ---- it didn't have anything to do with her guilt. Judge, what it had to do with was the decision of whether she should plead guilty or whether she should proceed to trial and exercise her trial rights. Well, the factors of her guilty plea were the ones that Judge Moody examined her on, not what she was holding back in her own mind or maybe she wasn't even ---- hadn't thought about. But that's not that unusual for a defendant later on to have something that they hadn't thought about, but didn't relate to whether they were guilty or not. That's true, Your Honor. However, after the Supreme Court's decision in Padilla v. Kanducky where they found that deportation, which had for years been looked at as a collateral consequence, was something that had to be reexamined and informed about, both Justices Alito and Roberts in their concurring opinion said that there are other very serious consequences as well and that one alternative to requiring or putting an extra burden of information on an attorney would be to have a more liberal interpretation of the rules governing motions to withdraw a plea so that in particular cases a judge could make the discretionary decision of whether this merits withdrawal or not. As for citizenship. Right. And I would suggest in the particular circumstances of this case that the collateral consequence to what has been considered a collateral consequence to Ms. McGuire was as important and perhaps more important than deportation in some cases because what you're talking about is the core of a person's ability not only to support themselves in the present but to obtain the property rights interest in their pension that they've accrued over 20 years' time working, especially in a case like this one where the charge defense had nothing to do with her job, her work performance, or anything else. It was something completely separate and apart. So it was not a case in which she had embezzled from her employer or done something else that affected her job. And so in a particular situation like this where she needed to have that information and where the court has always looked at collateral consequences as something that's not immediate and direct. And in this particular case the consequence to Ms. McGuire is immediate and direct. At the moment her guilty finding is final. She loses her job and her pension. So I think that takes it out of the realm of the typical collateral consequence, which is civil proceedings or money damages or things of that nature. And in the underlying policy of trying to narrowly restrict motions to withdraw a plea is to have people treat these situations seriously and not on a lark to decide that they have made the wrong decision. And I would suggest in this case that's not what happens. In most of the cases that this court has seen, people are complaining about what happens to them at sentencing. I see my time's up. May I finish my thought? No, you're in rebuttal, but you may have extra time. Okay, thank you. Ms. McGuire is not complaining about something that happened after the fact. In fact, the benefit of her plea agreement is a very good one, and she's actually taking a serious risk by saying that she wants to withdraw her plea and proceed to trial because she received a sentence of probation, and by going to trial she would face a possibility of prison time if she lost. And that shows that this is not an ill-considered or whim on her part. It's that her employment and her pension are that serious to her that once she understood the complete impact of what she did, she asked the court to allow her to change direction and to risk that prison time in order to try and save. But it didn't have anything to do whether or not she thought she was guilty. Well, I would suggest that it also had to do with that judge, and that came out in the sentencing colloquy where she told the judge she didn't understand why she was there, that she wasn't a felon, that she was a firefighter, and that she did riot. She knew at least he was selling marijuana. Maybe she didn't know he was selling cocaine, but she knew he was selling marijuana, and she was laundering that money for him. Well, I think that were the case, Judge, to go to trial, that she had a colorable defense of not knowing that what she was doing was taking proceeds from a crime. Ms. Gambino, when you entered the case, I assume that's when she became aware of the exposure she had. No, Judge, I think she became aware before, and that's why she... All right, well, so now you're in the case in May of 13. You want to withdraw the plea. I don't want to get into defense strategy, but you want to withdraw the plea, at least at that time, and maybe reconsider it down the road. Was the government opposed to the withdrawal of the plea? Did you seek to get government acquiescence with the possibility that it would, just frankly, she'd be in a different position if possessed of the pension, retired or whatever the status is, and then reconsider the plea? What was the status then? We did attempt to negotiate, but the government was opposed, and that is why we took the route that we did. That's all. Thank you, Judge. All right. Mr. Lanter? May it please the Court, Dean Lanter representing the United States in this case. Mr. Lanter, can I just follow up on that last matter? Recognizing why the defendant wanted to withdraw the plea, and I'm not suggesting the government was under any obligation to do anything other than oppose, you were aware why she wanted to withdraw the plea. I was not the trial counsel in this case. I got involved for the first time with this case approximately two months ago. I know at the time that the government filed a motion opposing the withdrawal of the plea agreement. I know that with regard to some other defendants that were charged with money laundering counts, I believe at least one other had attempted to withdraw her plea, and I believe part of the motivation, at least according to the government's trial counsel, was they believed that if they could get their pleas withdrawn at this late date in the case, that the government would not take the expense to actually take them to trial, so that years into the case with all the drug defendants pled and some of them sentenced, the risk was, or the hope was, if we get our plea withdrawn, the government at this point is just going to not move forward with the trial. So that is an alternative explanation as to why Ms. McGuire would want to attempt to withdraw her plea agreement in this case. But, again, I was not the trial counsel, and those facts are not in the record. Well, I'm not questioning the government taking that position. Right. They feel the plea has been entered, and good policy reasons not to. Yes, it's just that these facts seem a little interesting in light of the context of the case. Is this a matter of state law with regard to the pension? I mean, losing the pension based on a felony conviction? That is not in the record. We, or I, at least attempted to try to research that, and I do not know. The closest that I could come was some state of Indiana decisions from the 70s that discussed how it's up to a police merit board and things. So it's not a statute, but it's up to the governing board of the pension. Correct. I could not find anything that made it seem automatic and dealt into police records. Quite often in the hands of those kinds of boards, though, there is an appeal sometimes to the state commission. I believe it's a complicated. I think in Illinois they have that. I don't know. It may similarly be in Indiana that you can appeal those things. I believe it's a complicated process. At least I did not find anything. I think Illinois may have even, the legislature may have taken some action based on it. It's the government's position in this case, first, that the appeal should be dismissed. It's our position that Judge Moody conducted a thorough plea colloquy in full, and especially regarding the waiver of appellate rights, and that was knowing and voluntary in this case, and that the appeal should be dismissed because, as this court stated in Alcala, a waiver of the right to contest a conviction encompasses the waiver of the right to appeal the denial of emotional withdrawal guilty plea. Our second reason is that Judge Moody was never presented with the position that the plea should be withdrawn for any reason at all under 11d.1. At the time, the defense motion cast it as a motion to withdraw it under 11d.2b for any fair or just reason, and we do not believe that the defendant can establish clear error or plain error in this case on that point. Beyond that, I think the guilty plea colloquy is fairly clear in that Judge Moody made clear, even at the conclusion of the discussion of withholding adjudication of guilt, all right, her guilty plea is accepted, but I do withhold adjudication of guilt until her sentencing. That basically protects her rights. Judge Moody intended to and did. He said twice, I'm accepting her plea. Deferring acceptance of the plea agreement is a completely different matter. Finally, it's the government's position that having a court advise a defendant of collateral consequences such as potential employment consequences, especially when we're dealing with state employees in a police merit board or a fire merit board situation, gets very tricky. It's not like the immigration context, which is much more severe in our position. The immigration context is also a clearer advisement of rights. Judge Moody will ask a defendant, where were you born? If it was in America, he says, so you're a United States citizen. If it wasn't, he goes through the deportation context. Unless the court has any other questions, I'm going to yield the rest of my time, and we ask that the appeal be dismissed or any alternative affirmed. Thank you, Mr. Lantern. Ms. Gambino? Your time has expired, but you may have an additional two minutes. In response, first of all, this is the first time I'm hearing about his alternative explanation. That certainly was not the reason for Ms. McGuire to seek to withdraw her guilty plea. She did it as soon as she realized what the impact was going to be on her. Second of all, this court in Wenger and Behrman said that in cases where the allegation is a constitutional violation, an unknowing or involuntary plea or ineffective assistance of counsel, then the waiver goes out with the plea, and so that is the reason why we advocate this appeal should not be dismissed. It's hard for me to accept the proposition that she didn't know about these collateral consequences to her employment and pension because there was a great deal of discussion of that at the plea hearing, because that was the very basis on which her then-counsel, together with the government, suggested to the court that the judge withhold adjudication of guilt. I mean, that was the whole reason for it, and it was discussed at length, and the judge was a little confused about why do you want me to do that, and so it was all explained on the record, and she's sitting right there listening to it. That's true that she was listening to that judge, but I don't think it was until that point that she fully understood what was going on, and that the fact, I think she sort of conflated prison with the loss of her job and didn't realize the fact that she was going to get probation, wasn't going to save her job, and so I think when she finally realized the entirety of the impact of what she had done, then she decided she had to do something about that. So I think, you know, I understand the court's concern about that, and this is not a case in which we are claiming or requiring that the judge do anything, but consider when the particular circumstances of this case were brought before him that they constitute a fair and just reason for her to change direction. Thank you. We ask that the case be remanded. Thank you, Ms. Campito. Mr. Lampton, the case is taken under advisement.